UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVE MORALES, et al., | Case No. 21-cv-03957-EMC |
| Plaintiffs, | |
| v. | **ORDER GRANTING DEFENDANT'S MOTION TO DISMISS THIRD AMENDED COMPLAINT** |
| CITY AND COUNTY OF SAN FRANCISCO, et al., | Docket No. 53 |
| Defendants. | |

## I.    INTRODUCTION

In this case, Plaintiffs Steve Morales and a minor through their guardian Wendy Chau, filed suit against the City and County of San Francisco ("CCSF"), two law enforcement officers Russell Fong and Ryan Lau, Justice Operating Company, LLC (the "Hilton Hotel"), and Does 1–50 (law enforcement officers and those responsible for their training, supervision and/or conduct). Plaintiffs allege that his Fourth Amendment rights were violated when law enforcement officers unlawfully detained him and used excessive force. Against the officers, Plaintiffs allege unlawful detention and excessive force under 42 U.S.C. Section 1983. Against the officers and CCSF, Plaintiffs allege state claims of assault, battery, negligence, false imprisonment/illegal detention, and negligent infliction of emotional distress. For the reasons set forth below, the Court **GRANTS** CCSF's motion to dismiss Morales's Third Amended Complaint ("TAC") with prejudice.

///

///

///

United States District Court
Northern District of California

## II.       FACTUAL & PROCEDURAL BACKGROUND

A.       Procedural Background

On May 25, 2021, Plaintiffs filed an initial complaint, which was subsequently amended solely to correct Hilton Hotel's name and to include a photo. *See* Docket No. 1; Docket No. 14. On October 7, 2021, this Court dismissed the First Amended Complaint ("FAC") for failure to state a claim. *See* Docket No. 24 ("Minute Order 1") at 1.

Thereafter, in the Second Amended Complaint ("SAC"), Plaintiffs had alleged that the police officers lied in claiming that the Hilton Hotel had called to report a domestic dispute and possible child custody issue and told the police that Morales was not allowed to take the child he was carrying. Docket No. 29 (SAC) at 5. Plaintiffs had further detailed in their brief that the hotel's manager aided the alleged false imprisonment by whispering in the officers' ears and egging the false imprisonment. Docket No. 44 (SAC Opp'n) at 5. Plaintiffs alleged that the officers fabricated such claims because the dispatch records did not reflect such a call. SAC at 5. At the same time, Plaintiffs also alleged that the Hilton Hotel made false reports to the police. *See id.* at 10.

On January 20, 2022, the Court granted CSSF's and Hilton Hotel's motions to dismiss Plaintiffs' SAC, finding that (1) the accusation against Hilton Hotel was difficult to reconcile with the allegations against CCSF (they were inconsistent with each other), and (2) the alleged force – the grab and twist of the arm and a chest bump – was insufficient without any allegations of injury, pain or description that it was violent or aggressive. *See* Docket No. 49 ("Minute Order 2") (citing *Berry v. City & Cty. of San Francisco*, No. 17- CV-00056-EDL, 2017 WL 10487546, at *6 (N.D. Cal. Dec. 29, 2017) ("Minimal injury does not defeat a claim of excessive force by itself, but the degree of injury can be indicative of the amount of force that was applied, which is one factor in the reasonableness determination.")).

B.       Factual Background

In the TAC, Plaintiffs remove the Hilton Hotel as a defendant and name the two officers of the San Francisco Police Department – Russel Fond and Ryan Lau. *See generally* Docket No. 52 (TAC). The TAC deletes the hotel's involvement and does not discuss the lack of Computer

1    Automated Dispatch records.  *Id.*

2         Plaintiffs make the following allegations in the TAC:

3         On May 28, 2020, Morales visited his fiancée (Wendy Chau), their infant, and Ms. Chau's

4    sister at the Hilton Hotel.  TAC at 4.  At the hotel, Morales asked a security guard for directions to

5    the elevator.  *Id.*  The security guard questioned Morales about being a registered guest, and he

6    explained he was not a registered guest but visiting a registered guest.  *Id.*  He then met the

7    registered hotel guest, Ms. Chau's sister, and went up the elevator and to the hotel room.  *Id.*

8         After visiting, Morales left the hotel to go to his car and wait for his fiancée and her sister.

9    TAC at 5.  He had no further interactions with hotel staff.  *Id.*  As Morales stepped out of the hotel

10   onto the city sidewalk with his infant in his arms and proceeded to walk to his car with a friend,

11   two law enforcement officers, Fong and Lau, came from behind him.  *Id.*  An officer jerked one of

12   his arms behind his back, nearly causing him to lose hold of his infant child, and challenged

13   Morales to fight him.  *Id.*  Unable to see who the officers were, Morales was concerned that he

14   was being mugged, and he pulled away for his and his child's safety.  *Id.*  The officers then

15   grabbed and twisted Morales' arm while he held his baby in the other and told him he was being

16   detained.  *Id.*  They then detained him across the street from the Hilton Hotel, and Morales

17   permitted the officers to twist one of his arms while he held his baby in the other.  *Id.*

18        When Morales asked the officers why he was being detained, Fong and Lau lied by saying

19   that he was seen having an argument with his wife and that a hotel employee told Fong and Lau

20   that Morales was not allowed to take the baby.  *Id.*  According to Morales, neither officer had any

21   reliable information or evidence (including any information provided by Hilton employees) and

22   invented the allegation that Morales did not have the right to take his daughter without any

23   reasonable basis.  *Id.* at 7.  He alleges that neither officer prepared reports that indicated they were

24   investigating a child custody issue or kidnapping.  *Id.* at 5–6.  Neither officer had any written

25   documents to justify or document their seizure and force.  *Id.* at 6.  Instead, the complaint implies

26   the officers stopped him solely because he and the child appeared to be of different races.

27        The officers then insisted that Morales prove his relationship with his daughter, and

28   Morales instructed his friend to call his fiancée, the mother of his child.  *Id.*  Lau and Morales

1   argued about whether the officers had instructed Morales to call his fiancée in the first place.  *Id.*

2   Lau then challenged Morales to hit him, then challenged Morales to fight him by bumping

3   Morales with his chest and aggressively saying, "Come on."  *Id.*  Lau also aggressively got in

4   Morales' face while he held his child in his arms.  *Id.*

5        At this point, Fong interceded to calm down Lau.  *Id.*  However, the officers continued to

6   refuse to believe that Morales, an African-American man, was the father of his baby, who

7   appeared Asian-American.  The officers continued to act aggressively toward Morales and refused

8   to believe him before finally permitting him and his family to leave.

9        In sum, the only difference between the SAC and TAC seems to be the removal of Hilton

10  Hotel as a defendant and discussions of dispatch records, the naming of the two officers, and

11  adding that the officers "aggressively" said, "Come on."

12                        **III.    LEGAL STANDARD**

13       Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and plain

14  statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2). A

15  complaint that fails to meet this standard may be dismissed pursuant to Rule 12(b)(6).  *See* Fed. R.

16  Civ. P. 12(b)(6).  To overcome a Rule 12(b)(6) motion to dismiss after the Supreme Court's

17  decisions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corporation v. Twombly*, 550

18  U.S. 544 (2007), a plaintiff's "factual allegations [in the complaint] 'must . . . suggest that the

19  claim has at least a plausible chance of success.'"  *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th

20  Cir. 2014).  The court "accept[s] factual allegations in the complaint as true and construe[s] the

21  pleadings in the light most favorable to the nonmoving party."  *Manzarek v. St. Paul Fire &*

22  *Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  But "allegations in a complaint . . . may not

23  simply recite the elements of a cause of action [and] must contain sufficient allegations of

24  underlying facts to give fair notice and to enable the opposing party to defend itself effectively."

25  Levitt, 765 F.3d at 1135 (quoting *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d

26  990, 996 (9th Cir. 2014)).  "A claim has facial plausibility when the Plaintiff pleads factual

27  content that allows the court to draw the reasonable inference that the Defendant is liable for the

28  misconduct alleged."  *Iqbal*, 556 U.S. at 678.  "The plausibility standard is not akin to a

United States District Court
Northern District of California

'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

## IV.    **DISCUSSION**

A.    <u>Reasonable Suspicion</u>

"[A]n officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123, (2000) (citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968)); *see also United States v. Bontemps*, 977 F.3d 909, 913 (9th Cir, 2020). "[T]he Supreme Court has said repeatedly that they must look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." *United States v. Brown*, 996 F.3d 998, 1006 (9th Cir. 2021) (quoting *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (internal quotation marks omitted).

Previously, Plaintiffs had argued that the officers fabricated that the Hilton Hotel had called to report a domestic dispute and possible child custody issue because the dispatch records did not reflect such a call.[1] SAC at 5. At the same time, Plaintiffs had argued that the Hilton Hotel was involved with Morales' detention. *Id.*

With the Hilton Hotel now out of the picture in the TAC, Plaintiffs argue that Defendants lacked any reasonable suspicion because the officers had no information suggesting that Morales had committed any crime. Docket No. 57 (Opp'n) at 7. According to Plaintiffs, any claims of a report from the hotel were fabricated. Instead, the officers deduced their suspicion solely from the racial difference between Morales, an African-American man, and his daughter, an Asian-American infant. *Id.* at 6–7. Plaintiffs then cite cases that hold that racial profiles or the avoidance of the police, by itself, is insufficient to constitute the basis of reasonable suspicion. *Id.* (citing *Lopez v. City of Glendora*, 811 Fed. Appx. 1016, 1018 (9th Cir. 2020); *Liberal v. Estrada*, 632 F.3d 1064, 1078 (9th Cir. 2011)).

---

[1] A police report would provide officers with reasonable suspicion that would justify an investigatory stop. *See United States v. Edwards*, 761 F.3d 977, 984 (9th Cir. 2014). Kidnapping, child abduction, and deprivation of custody of a child are crimes that can be committed even by a parent. Cal. Penal Code §§ 207, 278, 278.5.

United States District Court
Northern District of California

1    The TAC is difficult to reconcile with the previous complaints.  Plaintiffs are not

2   necessarily prohibited from making inconsistent allegations.  *See Sayeed v. Cheatham Farms*

3   *Master Homeowners' Ass'n*, No. CV 18-2073 PA (SKX), 2018 WL 8053811, at *4 (C.D. Cal. Oct.

4   29, 2018) (citing *Airs Aromatics*, 744 F.3d at 600 (finding that inconsistent allegations are not a

5   basis for striking a pleading unless there is a showing of bad faith)).  However, "[t]he Court does

6   not ignore the prior allegations in determining the plausibility of the current pleadings" and is "not

7   required to accept as true [contradictory] allegations in an amended complaint" without more

8   facts.  *See Stanislaus Food Prod. Co. v. USS-POSCO Indus.*, 782 F. Supp. 2d 1059, 1076 (E.D.

9   Cal. 2011) (citing *Ellingson v. Burlington Northern, Inc.*, 653 F.2d 1327, 1329 (9th Cir.1981),

10  *superseded by rule on other grounds as stated in PAE Gov't Servs., Inc. v. MPRI, Inc.*, 514 F.3d

11  856, 859 n. 3 (9th Cir.2007) (finding that while "the plaintiff permissibly may alter the challenged

12  conduct in an amended complaint[,]" it "must allege more factual support" when the plaintiff

13  altered the relevant agreement at issue); *see also J. Edwards Jewelry Distrib., LLC. v. Wells Fargo*

14  *& Co.*, No. 18-CV-03886-YGR, 2019 WL 2329248, at *4 (N.D. Cal. May 31, 2019) ("The fact

15  that plaintiff has now eliminated these allegations and this exhibit from its SAC does not impact

16  the Court's [prior] analysis. . . . [The plaintiff] cannot avoid application of the statute of

17  limitations by simply deleting from its amended complaint allegations evidencing its

18  discovery[.]").  Therefore, the Court need not disregard the fact that an inconsistent allegation was

19  previously made.  Furthermore, "[a] party cannot amend pleadings to 'directly contradict[t] an

20  earlier assertion made in the same proceeding[]'"; yet this is exactly what Plaintiffs have done by

21  simply deleting the allegations against the hotel and stating that the hotel had no further

22  involvement.  *Airs Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt., Inc.*, 744 F.3d 595,

23  600 (9th Cir. 2014) (denying leave to amend for futility because "[a] party cannot amend

24  pleadings to 'directly contradict[t] an earlier assertion made in the same proceeding'") (citation

25  omitted)); TAC at 5.  Plaintiffs' current attempt to erase the hotel's involvement entirely in the

26  TAC is unconvincing, considering that their past brief argued that: "[o]bjective video evidence

27  show[ed] that [the hotel's] employee actively assisted the police officers in their false

28  imprisonment of Mr. Morales that was based on the hotel manager's fabricated allegations against

1    Plaintiff." SAC Opp'n at 1.  The officers informed Morales that there had been reports of his

2    argument with his wife and that the hotel employee had told the officers that he did not have

3    permission to take his child from the hotel.  *Id.* at 2-3.  Immediately after, the hotel manager

4    approached the officers and whispered into one of their ears.  *Id.* at 3.  The brief further detailed

5    that:

6                    [The hotel manager] followed Mr. Morales and the police officers
                     across the street and significant distance from the hotel premises.
7                    He verbally and physically intervened in keeping Mr. Morales'
                     friend from filming the encounter.  He helped surround and
8                    intimi[d]ate Mr. Morales—a noncommunicative act—to make Mr.
                     Morales feel that he was not free to leave and secure the false
9                    imprisonment.  The hotel manager whispered in the officer's ears,
                     egging the false imprisonment and to show Mr. Morales that he and
10                   the officers were working together.

11   *Id.* at 5.  These specific and detailed allegations regarding the hotel's actions are inconsistent with

12   the current allegation that Morales did not have any further interaction with the hotel staff upon

13   leaving the hotel and that the police officer's conduct was completely initiated on their own.  *See*

14   *id.*; TAC at 5.  Previously, the Court had allowed leave to amend his SAC upon Plaintiffs'

15   representation that it was not inconsistent to have first been targeted by the Hilton Hotel, and then

16   be targeted by the officers without any reasonable suspicion:

17                   Plaintiff alleges that the police claimed that the Hilton Hotel had
                     called to report a domestic dispute and possible child custody issue,
18                   and that the Hilton Hotel told them Plaintiff was not allowed to take
                     the child Plaintiff was carrying.  Plaintiff argues that the officers
19                   fabricated such claims because the dispatch records do not reflect
                     such a call.  However, Plaintiff also accuses Hilton Hotel of making
20                   false police reports, making his allegations against CCSF and the
                     Hilton Hotel difficult to reconcile.  Plaintiff purports that the two
21                   claims can be separated as two incidents such that the claims are not
                     inconsistent.  At the hearing Plaintiff contended that Hilton staff
22                   profiled and targeted him but did not accuse him of child abduction;
                     picking up on his being targeted, the police officers then detained
23                   Plaintiff and accused him of child abduction without any basis.
                     However, these allegations are not contained in the complaint.
24                   Therefore, Plaintiff's SAC fails to "give fair notice and . . . enable
                     the opposing party to defend itself effectively."
25

26   Minute Order 2 (citations omitted).  The TAC entirely omits rather than clarifies the role of Hilton

27   employees, and asserts an entirely different scenario – that the officers acted alone without any

28   influence by Hilton employees.

7

1    "[G]iven more likely explanations [that the stop was stemmed from the hotel's report (as

2    alleged in the original complaint)], [the TAC allegations] do not plausibly establish [racial

3    profiling]." *Iqbal*, 556 U.S. at 681.  Taking into account Plaintiffs' past pleadings and briefs, the

4    TAC fails to plausibly allege that the officers lacked reasonable suspicion to detain Morales.[2]

5    B.    <u>Excessive Force</u>

6        When evaluating a claim of excessive force, a court must ask "whether the officers' actions

7    are 'objectively reasonable' in light of the facts and circumstances confronting them" based on the

8    totality of the circumstances. *Graham v. Connor* 490 U.S. 386, 386 (1989).  This is judged from

9    the perspective of an officer on the scene rather than with the benefit of 20/20 hindsight. *Id.* at

10   396.  This gives allowances for the split-second judgments officers are required to make in "tense,

11   uncertain, and rapidly-evolving" situations. *Id.* at 396–97.  The right to employ "some degree of

12   physical coercion or threat thereof" accompanies the right to make the arrest or investigatory stop.

13   *Id.* at 396.  In determining whether an arrest or investigatory stop is properly carried out, courts

14   must balance the nature and quality of the officer's intrusion on Fourth Amendment rights against

15   competing government interests that justify the intrusion. *Cty. of Los Angeles, Calif. v. Mendez*,

16   137 S. Ct. 1539, 1546 (2017); *Graham*, 109 S. Ct. at 1871.  "When the governmental interests at

17   stake are substantial, a greater intrusion upon the Fourth Amendment rights of the person may be

18   justified.  Conversely, when the governmental interest is insubstantial, the application of even

19   minimal force may be unreasonable." *Nelson v. City of Davis*, 685 F.3d 867, at 878 (9th Cir.

20   2012).  Therefore, this requires an inquiry into the "(1) severity of the crime; (2) whether the

21   suspect posed an immediate threat to the officers' or public's safety; and (3) whether the suspect

22   was resisting arrest or attempting to escape." *Graham*, 109 S. Ct. at 1871.  Further, while

23

24   _____

[2] Defendants submit an exhibit of the 911 call from the hotel.  The call states that: "a guy come in
25   very hot, agitated, not a guest, was with a female, demanding to go up to the room and get his kid.
     She looked like she was afraid of him.  We couldn't stop him." *See* Docket No. 55.  According to
26   Defendants, the Court should consider this exhibit because the call is integral to Morales' claim.
     *See* Docket No. 53 at 11 (citing *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998) (holding
27   "that a district court ruling on a motion to dismiss may consider a document the authenticity of
     which is not contested, and upon which the plaintiff's complaint necessarily relies")).  Morales
     does not dispute the authenticity of the dispatch call.  However, considering that Morales' TAC
28   does not rely on the dispatch call, and his previous complaints also did not rely on it as he argued
     that no such call was made, this exhibit cannot be incorporated by reference or judicially noticed.

United States District Court
Northern District of California

1    excessive force cannot be found only on the basis of unlawful detention, the Ninth Circuit

2    considers "facts that gave rise to an unlawful detention or arrest" when evaluating whether the

3    force used to make the arrest was excessive. *Velazquez v. City of Long Beach* 793 F.3d 1010,

4    1024, fn. 13 (9th Cir. 2015).

5         In dismissing Plaintiffs' SAC, this Court previously explained:

6              Since the prior dismissed complaint which alleged a grab of the arm
               and a chest bump, Plaintiff adds that the officers "twisted his arm."
7              However, Plaintiff fails to allege any injury or pain associated with
               the arm twist or describe any force as violent or aggressive. *See*
8              *Berry v. City & Cty. of San Francisco*, No. 17- CV-00056-EDL,
               2017 WL 10487546, at *6 (N.D. Cal. Dec. 29, 2017) ("Minimal
9              injury does not defeat a claim of excessive force by itself, but the
               degree of injury can be indicative of the amount of force that was
10             applied, which is one factor in the reasonableness determination.").
               Therefore, the allegations in the SAC are insufficient to state a claim
11             of excessive force.  In addition, Plaintiff concedes that the excessive
               force claim turns on the unlawful detention claim; it lies to the
12             extent the policy had no basis to detain Plaintiff.

13   Minute Order 2 at 2.

14        Plaintiffs identify two uses of excessive force: that (1) Lau and Fong "aggressively

15   grabb[ed] and yank[ed]" and twisted his arm[3] while Morales held his child in his arms, and (2)

16   Lau chest-bumped him while challenging him to fight.  Opp'n at 8.

17        The first factor, the seriousness of the suspected crime, favors Defendants.  As discussed

18   above, there was reasonable suspicion of child abduction, which is a severe crime.

19        The second factor slightly favors Plaintiffs.  Plaintiffs argue that no force was needed

20   because Morales was not displaying any threatening or potentially violent behavior.  Opp'n at 9

21   (quoting *Marella v. City of Bakersfield*, No. 1:09-CV-00453, 2010 WL 3386465 at *9 (E.D. Cal.

22   Aug. 26, 2010) ("[A] law enforcement officer may not use force on a compliant suspect already

23   under the officer's control and not resisting detention or trying to flee"); *Sants v. Seipert*, No. 215-

24   CV-00355-KJMCKD, 2021 WL 465292 at *4 (E.D. Cal. Feb. 9, 2021) ("'Reactive defensive

25   movements' such as pulling away from an officer's grasp does not indicate any danger posed to

26

27   _____
     [3] Although this is what Morales argues in his opposition, the TAC does not allege that it was the
28   grabbing or yanking of Morales' arms that was aggressive.  The TAC states that the officers
     "aggressively" got in his face, acted aggressively, and aggressively said "Come on."  TAC at 6.

United States District Court
Northern District of California

officers that would justify the use of force")).  Indeed, Morales had not displayed any threatening or violent behavior towards the officers.  However, the Court notes that the force used by Defendants were minor compared to the extreme cases cited by Plaintiffs.  In *Marella*, the court held that an officer used excessive force by tasing an unresisting suspect with hands raised, and that an officer may not use force on a suspect who was already tased and unconscious.  *Marella*, 2010 WL 3386465, at *6–7, *9.  In *Sants*, the court found that spinning to face an officer while in his grasp and similar reactive defensive movements "do not alone demonstrate a danger to an arresting officer or anyone else" and did not justify repeated blows to the head that resulted in permanent disability.  *Sants*, 2021 WL 465292, at *4.  The use of force alleged by Morales is much weaker compared to these cases.

As discussed in the previous hearing, most cases that deal with a twist of the arm are handcuffing cases during arrests and involve complaints of pain and injury.  The severity of the plaintiff's injury may be evidence of severity of the force used.  *Brown v. City of Oakland*, No. C03-1141 TEH, 2006 WL 1760747, at *6 (N.D. Cal. June 27, 2006) (citing *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 918 (9th Cir. 2001); *Berry v. City & Cty. of San Francisco*, No. 17-CV-00056-EDL, 2017 WL 10487546, at *6 (N.D. Cal. Dec. 29, 2017) ("Minimal injury does not defeat a claim of excessive force by itself, but the degree of injury can be indicative of the amount of force that was applied, which is one factor in the reasonableness determination.") (internal quotation marks and citations omitted)).  Although there are many cases alleging excessive force for an arm twist causing injury, few cases deal with the single act of the twisting of the arm without injury or allegations of severity of the twisting.  One district court has rejected the defendant officers' *de minimis* argument where the plaintiff alleged "violent twisting of the arm" and "an aggressive[] chest bump."  *See Bradford v. Cty. of Oakland*, No. 19-CV-10395, 2020 WL 5993217, at *6 (E.D. Mich. Oct. 9, 2020) ("[The plaintiff] describes [that the defendants] violently twist[ed] his arm and aggressively chest bump[ed] him . . . [the plaintiff] had a clearly established right to be free from this unnecessary and violent force where he was not resisting and not posing a threat to the officers.").  Therefore, the second factor favors Plaintiffs, but only slightly.

10

1   The third factor favors Defendants.  Morales does not seem to have been a "compliant

2 suspect already under the officer's control and not resisting detention," as he admits that he pulled

3 away when the officers first jerked his arm, thinking that he was being mugged.  This resistance

4 further distinguishes this case from *Bradford* and *Marella*, where the plaintiff was not resisting the

5 officers at all.  *See Marella*, 2010 WL 3386465, at *9; TAC at 5 ("Unable to see who the officers

6 were, Morales was concerned that he was being mugged, and he pulled away for his and his

7 child's safety.").

8   In sum, the Court concludes that the officers' use of force was reasonable comparison to

9 government interests.  They suspected child abduction, which is a serious crime.  Although

10 Morales did not display any threatening or violent behavior, there was some resistance.  The force

11 used was minor and reasonably warranted considering the totality of the circumstances, and

12 nowhere near the degree of forced used in the cases cited by Plaintiffs.  This is bolstered by the

13 fact that Plaintiffs were unable to add any meaningful facts to the TAC since the prior dismissal.

14 Plaintiffs' allegations are identical to the SAC except the word "aggressive" is used to describe the

15 words "Come on" and Lau's behavior in the TAC, as well as the arm twist in the Opposition.  *See*

16 TAC at 6; Opp'n at 8.  According to the TAC, the officers first "jerked one of his arms behind his

17 back, nearly causing him to lose hold of his infant child and challenged him to fight him."  TAC at 5.

18 Upon Morales pulling away, the officers "grabbed and twisted Morales' arms."  *Id.*

19   The initial jerk and grab of Morales' arm can be justified to ensure that he did not leave

20 with the child.  The subsequent twist of the arm, even accepting Morales' argument that it was

21 "aggressive," is not excessive.  As discussed in the previous hearing, Plaintiffs' allegations of

22 force are weaker than the force at issue in *Bradford* because Morales does not describe the degree

23 of the force of the arm twist as "violent" or that the officers twisted the arm "behind his back."

24 Like the SAC, no injury, pain, or the severity of the arm twist is alleged by Morales.  The TAC

25 does not allege that he voiced any pain or asked the officers to stop twisting his arm.  In fact, he

26 states that after the initial twist, he "then permitted the officer to twist one of his arms."  TAC at 5.

27 The allegation that Lau "got in his face" aggressively is also insufficient to constitute excessive

28 force.  These facts also come nowhere close to the repeated blows to the head and dealing with an

United States District Court
Northern District of California

1  unconscious person in *Marella* and *Sants*.  Morales does not claim any physical injury.

2       Accordingly, there is no plausible allegation of excessive force.

3  C.   <u>State Law Claims</u>

4       At the October 7, 2021 hearing, this Court established, and the parties continue to be in

5  agreement, that: (1) CCSF can be vicariously liable if police officers unlawfully detained Morales

6  and/or used excessive force against him under the California Government Code, and (2) the Fourth

7  Amendment's reasonableness standard applies to the state law claims in police cases.  *See* Minute

8  Order at 1; Cal. Gov't Code § 815.2 ("A public entity is liable for injury proximately caused by an

9  act or omission of an employee of the public entity within the scope of his employment if the act

10 or omission would, apart from this section, have given rise to a cause of action against that

11 employee or his personal representative."); *see Blankenhorn v. City of Orange*, 485 F.3d 463, 487

12 (9th Cir. 2007); *Edson v. City of Anaheim*, 63 Cal. App. 4th 1269, 1274 (1998) (noting that actions

13 under § 1983 in police cases are the federal counterpart to state claims and that the reasonable

14 force standard under federal law applies equally to state law); *Johnson v. County of Los Angeles*,

15 340 F.3d 787, 794 (9th Cir. 2003); *see Susag v. City of Lake Forest*, 94 Cal. App. 4th 1401, 1415

16 (2002) (the plaintiff's failure to establish a "seizure" under the Fourth Amendment defeated his

17 state law claims of battery, intentional infliction of emotional distress, and false imprisonment);

18 *Avina v. United States*, 681 F.3d 1127, 1131 (9th Cir. 2012) ("In California, [state law] claims that

19 police officers used excessive force in the course of an arrest, investigatory stop or other seizure of

20 a free citizen are analyzed under the reasonableness standard of the Fourth Amendment to the

21 United States Constitution.").

22       Plaintiffs concede that the assault, battery, and negligence claims are predicated on

23 showing that Lau and Fong used unreasonable force.  Opp'n at 9–10.  Plaintiffs also concede that

24 the negligent infliction of emotional distress claim is based on the negligence claim.  *Id.*; *see also*

25 *Potter v. Firestone Tire & Rubber Co.*, 863 P.2d 795, 808 (Cal. 1993).  As such, without excessive

26 force, all of the state claims fail.

27 ///

28 ///

United States District Court
Northern District of California

## V.   CONCLUSION

For the foregoing reasons, the Court **GRANTS** CCSF's motion to dismiss for failure to state a claim with prejudice, as Plaintiffs fail to allege any additional meaningful fact in the TAC. This order disposes of Docket No. 53.  The Clerk shall enter judgment and close the case.

**IT IS SO ORDERED**.

Dated: May 20, 2022

_____
EDWARD M. CHEN
United States District Judge

United States District Court
Northern District of California